### BEATTIE MFG. CO. v. HEALD et al.

(District Court, N. D. New York. July 8, 1920.)

**Patents ⬤⇒328—For folding machines valid and infringed.**

The Maitland & Beattie patents, No. 713,230, for a folding machine for collars and cuffs, and No. 1,071,677, for improvement on the same, the Smith patent, No. 972,272, and the Beattie patents, No. 972,495 and No. 972,320, all relating to folding machines, *held* valid and infringed.

In Equity. Suit by the Beattie Manufacturing Company against Margaret L. Heald, doing business as the E. H. Brown Manufacturing Company, and Ida Maitland, executrix of the will of John Maitland, deceased. On final hearing. Decree for complainant.

Suit in equity to restrain alleged infringement of United States letters patent Nos. 713,230, 972,320, 972,495, 972,272, and 1,071,677, all relating to folding machines, and for an accounting; also a motion to dismiss on the ground of laches, and a motion to strike out the testimony of Walter J. Beattie, for refusal to produce him for further cross-examination.

Frank C. Curtis, of Troy, N. Y., for plaintiff.

Walter E. Ward, of Albany, N. Y., and Harry Hayward Allen, of Washington, D. C., for defendants.

RAY, District Judge. This suit was originally brought by the plaintiff, the Beattie Manufacturing Company, against the defendant Margaret L. Heald, trading and doing business under the name and style of E. H. Brown Manufacturing Company, upon all of the patents above recited, except No. 972,272.

Upon taking proofs in the prima facie case, plaintiff found that a part of the technical legal title to patent No. 713,230 remained in Ida Maitland, executrix of John Maitland, one of the joint inventors up-

on whose application said patent was granted, and that another of plaintiff's patents, No. 972,272, also alleged to have been infringed by the defendant, had been inadvertently omitted from the original bill. The court thereupon, on motion and the payment of costs, permitted the bill to be amended to bring in the omitted patent and to make Ida Maitland, executrix, a party defendant; she having declined to join as party plaintiff.

Thereafter the defendant, who had already answered the original bill, filed an amended answer to the amended bill, setting up the usual defenses to a patent suit, and Ida Maitland, executrix, filed a separate answer, admitting all of the facts charged in the amended or supplemental bill, and disclaiming all interest in the matter in controversy in favor of the plaintiff. Proofs were thereupon taken by deposition, in accordance with a stipulation entered into by the parties, which was approved by the court for cause shown.

The five patents in suit relate to various features of folding machines, such as are commonly used for folding or inturning the edges of fabric blanks in the manufacture of collars, cuffs, and the like. The charge of infringement is based upon the manufacture and sale by the defendant of two types of machine in evidence, respectively, as "Plaintiff's Exhibit Defendant's Band Machine" and "Plaintiff's Exhibit Defendant's Top Machine"; the band machine being adapted for folding or inturning the edges of a blank on all of its sides in making the band of a collar, while the top machine is adapted for folding or inturning the edges of the blank upon three sides only, leaving the fourth side unturned for insertion between the blanks or plies of the band, as in the manufacture of fold collars.

### Patent No. 713,230.

Patent No. 713,230 is dated November 11, 1902, issued on an application filed April 5, 1902, by John Maitland and Walter J. Beattie, joint inventors. Claim 3 is the only claim in issue. This feature of the machine relates to the supporting of the thin sheet metal die plate or former plate, which determines the shape of the folded blank and over the edge of which the edge of the blank is inturned by the folders. This former plate is of very thin sheet metal and requires an immediate support, to which it is attached, which support can be readily mounted upon the die head or former head of the machine. The former head or die head is provided with a slideway or seat, which is adapted to interchangeably receive and support the former blocks for all forms of former plate; that is, while the former plates themselves must differ in outline according to the blank to be folded, the former block, where attached to the die head, should always be the same; in order to be interchangeable with other former blocks, but that portion of the former block to which the thin former plate is directly attached should conform generally to the form of the edge of the particular thin former plate. These thin former plates, adapted for folding the bands of collars, are very narrow and very irregular in outline, so that to machine a solid piece of metal into a former block of such complex shape that one portion of it will be of standard form interchangeable

with other former blocks in attachment to the die head, while the portion to which the irregular former plate is directly attached shall conform to the shape of the thin former plate, is a difficult and expensive task. This difficulty is overcome by the construction set forth in claim 3 of this patent, No. 713,230, which reads as follows:

"3. In a folding machine, former mechanism, comprising in part a former plate and a former block split part way of its length, one member thereof being bent to conform to the edge of said former plate and secured thereto, and the other member being provided with means for securing the same to a supporting member of said former mechanism, substantially as described."

By splitting the former block part way of its length, one of the members thus formed can be left in its original straight form, while the other member can be readily bent to conform to the shape of former plate which is to be attached to it. This is done by bending this member of the split former block without machine work upon the same. All of the former blocks thus have the members whereby they are attached to the die head of the same shape and dimensions, while their other members, to which the thin former plates are attached, can be made of different forms, in each case corresponding to the shape of former plate to be attached thereto.

Defendant's expert has been able to find no prior art reference against this claim. The utility of the construction seems too clear for argument, and defendant's expert admits that he finds in "Plaintiff's Exhibit Defendant's Band Machine" the construction called for by this claim 3.

### Patent No. 972,272.

Patent No. 972,272 is dated October 11, 1910, issued on an application filed February 14, 1908, by George W. Smith, inventor. Claims 1, 2, and 7 only of this patent are in issue. Each of these claims recites the general construction of the folding machine, including the bed plate, die, and infolders. The invention consists broadly in providing separate heating means for the bed and for the infolders. The prior art shows no disclosure of separate means for heating the bed and for heating the infolders. For the purpose of the present suit claims 1, 2, and 7, are substantially alike. Claim 1 is as follows:

"1. In a folding machine, a rigid frame, a bed plate movable within the frame, means within the bed plate for heating the same, a die plate adapted to co-operate with the bed plate for clamping between them a blank to be folded, slidable infolders for folding the edges of a blank over the die plate, each infolder being provided with means for the insertion of heating means, means for simultaneously operating the infolders, and means for pressing the bed plate and die plate into co-operative relation, turning the edges of the blank over said die, and forcing said bed and die against the infolders to press the turned edges of the blank."

The gist of the invention is recited in this claim as follows:

"Means within the bed plate for heating the same," and "each infolder being provided with means for the insertion of heating means."

In claim 2, these features are referred to in the following language:

"Means within the bed plate for heating the same," and "each infolder being provided with means for the insertion of heating means independent of the bed plate heating means."

In claim 7 these features are referred to in the following language:

"A bed plate adapted to be heated," and "each of said infolders being provided with means for the insertion of heating means separate of the bed plate heating means."

This invention permits the infolders to be more highly heated than the bed. It is, of course, desirable to have the folding elements heated to the highest temperature which can be employed without scorching the goods. In the folding operation the blank is in contact with the bed for a considerably longer period than it is with the infolders, because the blank must be laid upon the bed before the infolders move in over the edges of the blank, and cannot be removed from the bed until after the infolders have been fully withdrawn. The infolders, therefore, can be safely more highly heated than the bed, because they are in contact with the blank for a less time than the blank is in contact with the bed. Furthermore, it is safer to play closely to the maximum temperature of the infolder than it is to the maximum temperature of the bed, because a slight scorching of the face of the blank from an overheated bed is exposed on the surface of a finished collar, whereas a slight scorching of the inturned edges of the blank from an overheated infolder would be concealed between the two blanks of the collar when stitched together.

No details of the particular form of heating mechanism to be used in the infolders and in the bed are shown in this patent, and the claims are not limited to any particular form of heating mechanism, electric or otherwise. However, the first statement of the objects of the invention (line 10, page 1, of the patent) says:

"To construct a folding machine in which the bed plate and the infolders will be heated by electricity."

It appears from the testimony that prior to the date of the application for this patent Simplex heating units had been commonly known and could be obtained from the Simplex Electric Heating Company of various sizes as might be desired. These units comprised each a casting hollowed out to receive the electric resistance coils imbedded in a body of insulating material, and such units could be mounted by means of screws or bolts upon a desired part of a machine. In view of this there is no difficulty in understanding the specification of this patent, beginning at line 91, page 1, where it states:

"The under sides of the infolders, 12, have hollow spaces, 15, adapted to receive suitable electric heating means."

Nor the statement beginning at line 79, page 1:

"Attached to the under side of the bed plate, 10, is a box, 14, in which are placed suitable resistance coils for generating heat by electricity."

Whether the box, 14, is the hollow casting of an electric heating unit, like a Simplex heating unit, or whether it is simply a box forming a chamber into which a complete electric heating unit is installed, seems entirely immaterial, and the argument that the box, 14, is not part of the bed, within the meaning of these claims, is not worthy of serious consideration. The electric heating mechanism for the in-

folders in "Plaintiff's Exhibit Defendant's Top Machine" comprises an electric resistance coil mounted within the hollowed out infolder; the particular construction being hereinafter described more in detail in connection with patent No. 972,495. The electric heating mechanism in the bed of "Plaintiff's Exhibit Defendant's Top Machine" comprises an electric resistance coil placed in a recess formed in the underside of the bed plate and closed by a bottom plate, which is clamped to the bed plate. The ends of the coil project down through the bottom plate, where they are connected with the circuit wires. The bed itself thus forms the box or housing for the coil, instead of having the coil imbedded in a separate complete heating unit. The reference in the claims to this feature is, "Means within the bed plate for heating the same," which expression is employed in all three claims in issue. The heating mechanisms for the infolders and for the bed in "Defendant's Top Machine" clearly come within the description of each of claims 1, 2, and 7, and said exhibit clearly embodies the substance of the invention of these claims.

Defendant has introduced some testimony in an endeavor to show that Eugene H. Brown, the predecessor in business of the defendant Margaret L. Heald, as early as 1902 or 1903, employed Simplex or similar heating units in the folders of a folding machine, making the unit of considerable length and using it as the slide connection between two folder plates. This evidence is not satisfactory or convincing, and is not borne out by the records of the Simplex Electric Heating Company, nor by the correspondence which passed between Brown and the Simplex Company in 1908, which shows that as late as 1908 Brown had not learned how to satisfactorily make such a heating unit.

### Patent No. 972,495.

Patent No. 972,495 is dated October 11, 1910, issued on an application filed August 15, 1908, by Walter J. Beattie, inventor. Claim 1 only is in issue. This patent is properly considered in connection with the Smith patent, No. 972,272, because it relates to the working out of the most practical means for incorporating the electric heating resistance coils in the infolder.

It appears that the Simplex heating units had to be made of such thick castings that they were slow in conducting the heat to the thin sheet metal plates mounted upon the folder blocks. Beattie's solution of the problem was to make the folder itself the housing for the resistance coils, instead of incorporating the coils in a separate complete unit to be attached to the folder block. He accomplished this by dividing the folder block into two parts, separably screwed or bolted together; one or both of the members thus formed being hollowed out, forming between the members a chamber within which the resistance coil was mounted, with the terminals of the coil projecting out from between the two block members. None of the references referred to by defendant's expert shows an electrically heated infolder, nor do any of the references suggest the construction set forth in claim 1 of this patent, No. 972,495, which reads as follows:

266 F.—45

"1. In a machine for folding collar and cuff blanks, a heated bed plate, a die adapted to press blanks upon said bed plate, infolders adapted to move inwardly and fold the edges of the blanks over said die, each of said infolders being chambered and formed in two parts separably connected together, and an infolder plate attached to one of said parts, electric heating means within said chambers adapted to be supplied with current by electric wires from without, whereby the infolder plate of each infolder may be independently heated, means for moving said infolders to fold blanks over the die, and means for pressing the said blanks between the heated bed plate and the folder plates."

In the defendant's top machine each infolder block comprises a casting hollowed out on its underside, with a thin bottom plate to complete the closing of the chamber for the heating coil. The bottom member of defendant's folder block is thinner than the bottom member of the folder block shown in this patent, but the two members complete the chamber which receives the heating coil in substantially the manner called for by this claim. The claim involves invention, and is not avoided by the immaterial differences in the form of the two members of the folder block, nor by the fact that the terminals of the coil are led out from between the block members at the end, instead of at the side of the folder block.

### Patent No. 972,320.

Patent No. 972,320, is dated October 11, 1910, issued on an application filed May 21, 1908, by Walter J. Beattie, inventor. Claims 6 and 8 only are in issue. These read as follows:

"6. In a machine for folding collar and cuff blanks, a vertically movable bed plate, a die of thin sheet material comprising a fixed section and a slidable section, said die adapted to clamp blanks upon the bed plate, slidable folder plates adapted to fold the edges of said blanks over the edges of said die, means for raising the bed plate to press the folded blanks against the folder plates, means for supporting and lowering said die, and connections operated by said means for moving the slidable die section endwise to lengthen the die as said die is lowered."

"8. In a machine for folding collar and cuff blanks, a die therefor of thin sheet material formed of a plurality of sections, one of which is slidable longitudinally of the die, a swinging die head supporting said die, means engaging said slideable die section to move the same, and a connection attached to said moving means and hinged to a fixed part of the machine eccentric to the axis of oscillation of the die head."

The construction called for by these claims provides for automatically expanding and contracting a partly collapsible die. The importance of the improvement is due to the fact that it accomplishes a very material saving of time in the folding operation. This is accomplished by automatically expanding the die to full dimensions by the downward movement of the die into engagement with the blank on the bed, permitting the die to remain expanded throughout both the folding and pressing operations, and automatically contracting one end of the die by the upward movement of the die as it rises from the bed with the folded and pressed blank retained upon the die plates.

The prior patents in evidence show that it was not new with Beattie to automatically expand and contract a die in a folding machine, such

a construction being shown, for example, in the Fenwick patent, No. 688,460, which is selected by defendant's expert as the best reference to said claims; but in all of these prior constructions the die-operating mechanism was constructed so as to contract the die to withdraw the die plates from beneath the folded edges of the blank before the folded edges were pressed to fix the fold, and with the method of folding thereby made necessary the folded and pressed blank was left upon the bed, to be picked therefrom by the operator after the naked die had been raised from the bed. The patent to Fenwick, No. 688,460, does not disclose the simple mechanism shown in this patent to Beattie for contracting and expanding the die, but Beattie's invention consisted not so much in providing the particular means for expanding and contracting his die at the proper times as in the conception that a collapsible die could be operated in a manner to accomplish the folding of a blank by a new method or series of steps whereby a material saving in time would be accomplished. "The invention consisted rather in the idea that such change could be made, than in making the necessary mechanical alterations." Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586.

The sequence of steps in folding blanks upon machines of the general type in controversy as formerly constructed with a collapsible die was as follows: Pick up unfolded blank, place same on bed, lower die, move infolders in, contract die, press, remove folded blank from bed, place same on pile, etc. The sequence of steps in folding blanks by these machines embodying the subject-matter of these claims is as follows: Pick up unfolded blank while pressing previous blank, place same on bed, remove previous blank from raised die, place same on pile, lower die, move infolders in, press while picking up next blank, etc.

It will be seen that by the employment of Beattie's improvement the time formerly required by the operator in contracting the die is eliminated, while the operations of pressing a blank upon the bed and picking up the next blank to be folded are performed simultaneously.

Infringement of each of these claims is admitted as to both Defendant's Top Machine and Defendant's Band Machine.

## Patent No. 1,071,677.

Patent No. 1,071,677 is dated August 26, 1913, issued on an application filed August 18, 1905, by John Maitland and Walter J. Beattie, joint inventors. This patent shows a quite complicated power folding machine, but the only feature here in issue is that referred to in claims 8 and 9, which are as follows:

"8. In a folding machine, the combination with two folder plate sections, on one side of the machine, provided with a slide connection extending lengthwise of the plate sections; of a single actuating crank connected by a close-fitting connection with each section whereby a circular motion is imparted to the plate sections; and means for operating the cranks, substantially as described.

"9. In a folding machine, the combination with two folder plates adapted to fold one side of a blank and portions of two other and oppositely disposed sides; of a slide connection between the plates extending lengthwise of their

neighboring parts and transversely of the other parts, which are adapted to fold portions of the opposite sides of the blank; a plate actuating crank connected by a close-fitting connection with each of such folder plates whereby a circular motion is imparted to the plate sections; and means for operating the cranks, substantially as described."

In the specification reference is made to prior patent No. 713,230, issued to the same inventors, and which has hereinbefore been discussed, but not with respect to the feature now under consideration. In said prior patent are two infolders on the front side of the machine and two infolders on the rear side of the machine. The two infolders on the front side co-operate to fold the front edge of the blank, and the neighboring ends, or portions thereof, of the blank. The two rear infolders co-operate in the same manner with respect to the rear edge and neighboring end portions of the blank in folding blanks on all sides as for bands of collars. Where blanks for the tops of collars are to be folded, one pair of these infolders is omitted. The infolders of such a co-operative pair, in folding a longitudinal side and neighboring end portions of a blank, are moved longitudinally toward each other as well as inwardly and outwardly transversely of their length. In folding corner portions of a blank, most satisfactory results are obtained by moving the infolders each in the path of an arc of a circle, whereby the surplus of fabric at the folded-in corner of the blank is more uniformly and smoothly distributed.

Such a movement was provided for in said prior patent, No. 713,230, by providing two eccentrics with suitable operating mechanism therefor for each infolder of such a pair. These eccentrics required accurate adjustment, and also required to be operated accurately in unison with each other. The improvement set forth in patent No. 1,071,677, with respect to claims 8 and 9 thereof, consisted in providing a slide connection extending lengthwise of the pair of infolders, referred to in these claims as plate sections, and a single actuating crank connected by a close-fitting connection with each section, whereby a circular motion is imparted to the plate sections by operating these two single cranks. By a proper adjustment of these two cranks, precisely the same circular movement will be imparted to the respective infolders or plate sections as by the use of the four cranks (two for each infolder) in the early patent. All of the advantages of the earlier construction were thus attained, while eliminating two of the four cranks, with their operating mechanism, consisting of beveled gears. The advantage of the improvement are obvious.

The best reference, and practically the only reference relied upon by defendant's expert, is the Fenwick patent, No. 688,460; but a careful examination of this Fenwick patent fails to show, or even suggest, the mechanical movement called for by these claims. Fenwick employs four cranks, and necessarily so; two of these cranks being required to move the infolders longitudinally, and the other two to move the infolders transversely. Fenwick's construction can impart straight-line movements only to the infolders, whereas the object of the invention of these two claims is to impart a circular motion to the infolders or plate sections. In Fenwick the cranks are merely pull-

ing and pushing devices, while in the Maitland and Beattie construction the two cranks have a guiding function whereby the circular motion is imparted to the infolders. These two mechanical movements could hardly be more dissimilar.

The contention that the reference to the close-fitting connection between the cranks and the plate sections is new matter, not disclosed in the original specification, is without foundation. This expression merely means that the cranks operatively connect with the infolders without substantial lost motion, just as do the cranks in the prior patent, No. 713,230, which was referred to in the original specification, and patent No. 713,230 refers in like manner back to a still earlier patent, No. 666,766, granted to the same inventors.

The expression in claim 9, "portions of two other and oppositely disposed sides," clearly includes some portions less than the whole of these ends, as well as all portions of the ends of the blank. Defendant's expert admits infringement of each of these claims 8 and 9 by "Plaintiff's Exhibit Defendant's Band Machine."

It is immaterial, if true, that the cranks for these machines were furnished by Cluett, Peabody & Co., or that the machines were made pursuant to instructions from that company. The defendant Heald, who built the machines, is not relieved from liability for infringement because of the fact that another may have contributed to the infringement.

The motion to dismiss on the ground of laches is denied, as there is no evidence to sustain the charge.

The motion to strike out the testimony of Walter J. Beattie is also denied; he having been twice produced for cross-examination in the prima facie case. He could have been called as defendant's witness, had his further testimony been deemed material.

Plaintiff is the sole owner of each of the patents in suit. Claim 3 of patent No. 713,230, and claims 8 and 9 of patent No. 1,071,677, are valid, and infringed by Defendant's Band Machine. Claims 1, 2, and 7 of patent No. 972,272, and claim 1 of patent No. 972,495, are valid and infringed by Defendant's Top Machine. Claims 6 and 8 of patent No. 972,320 are valid, and infringed by Defendant's Band Machine and also by Defendant's Top Machine.

Plaintiff is entitled to a decree in the usual form for injunction and accounting, except as to patent No. 713,230, which has expired since the final hearing. This should be included in the accounting, but no injunction should be issued with respect thereto.